UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JANET DRAYTON, O/B/O ELLIOTT
L. DRAYTON, *deceased*,

                    Plaintiff,

      -against-

COMMISSIONER OF SOCIAL
SECURITY,

                  Defendant.

---

**MEMORANDUM AND ORDER**
Case No. 1:24-CV-3729 (FB)

*Appearances:*
*For the Plaintiff:*
HOWARD D. OLINSKY
Olinsky Law Group
250 South Clinton St., Ste 210
Syracuse, NY 13202

*For the Defendant:*
CHRISTOPHER N. HURD
SSA – Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

**BLOCK, Senior District Judge:**

Plaintiff Janet Drayton ("Plaintiff"), on behalf of her deceased husband

Elliott Drayton ("Drayton"), seeks review of Defendant the Commissioner of

Social Security's ("the Commissioner" or "Defendant") denial of Drayton's

application for Social Security Disability Insurance benefits under Title II of the

Social Security Act. Both parties moved for judgment on the pleadings pursuant to

Federal Rule of Civil Procedure 12(c). For the following reasons, Plaintiff's

motion is GRANTED, and the Commissioner's motion is DENIED. The case is

remanded for further proceedings consistent with this Memorandum and Order.

1

## I.    Background

Drayton applied for Social Security Disability Insurance benefits on January 1, 2020, alleging disability as of August 15, 2017, due to various physical impairments. An initial review denied his claims, and an administrative law judge ("ALJ") found Drayton not disabled in a decision dated July 6, 2023. He requested review of the ALJ's decision, which the Appeals Council denied on April 12, 2024. While awaiting the Appeals Council's decision, Drayton died and his widow, Plaintiff, was substituted as a party in the appeal. Pl.'s Mem. at 2, ECF No. 10-1.

## II.    Discussion

Plaintiff argues that the ALJ "erred by basing his decision on an [residual functional capacity ("RFC")] assessment that is unexplained and unsupported." Pl.'s Mem. at 5. The Court agrees that the ALJ inadequately explained and improperly justified his RFC findings, warranting remand pursuant to 42 U.S.C. § 405(g).

District courts reviewing the Commissioner's determinations under 42 U.S.C. § 405(g) must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been

2

applied."[1] *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022). They may not

conduct a *de novo* review or substitute their judgment for that of the ALJ, *see Cage*

*v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), reversing the ALJ "only

if the factual findings are not supported by substantial evidence or if the decision is

based on legal error," *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).

"Substantial evidence means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417

(2d Cir. 2013). The ALJ's legal conclusions are not entitled to deference "where an

error of law . . . might have affected the disposition of the case." *Pollard v. Halter*,

377 F.3d 183, 189 (2d Cir. 2004).

The Commissioner employs a five-step inquiry to evaluate Social Security

disability claims. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). At

steps one and two, the ALJ found that Drayton had not engaged in substantial

gainful activity since the alleged onset date and had the following severe

impairments: multilevel lumbar degenerative spondylosis with scoliosis, bilateral

hip degenerative joint disease, and lower sacroiliac degenerative joint disease.

However, also at step two, the ALJ concluded that Drayton did not have severe

intermittent asthma, a right inguinal hernia, hypertension, non-insulin-dependent

---

[1] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

diabetes mellitus, and alcohol dependence with liver damage. At step three, the

ALJ found that these impairments did not meet or equal the severity of the

specified impairments in the Listing of Impairments. At step four, the ALJ found

that Drayton had the residual functional capacity ("RFC") to perform light work

"as defined in 20 C.F.R. 404.1567(b), with additional limitations." Tr. at 27, ECF

No. 11. In particular, Drayton could: (1) "lift or carry up to 20 pounds occasionally

and 10 frequently," (2) "sit, stand, and walk up to six hours each in an eight-hour

workday, with regularly scheduled breaks," (3) "never climb

ladders/ropes/scaffolds and never balance," and (4) "occasionally climb

ramps/stairs and occasionally stoop." *Id.* It also limited Drayton's exposure to: (5)

"bronchial irritants such as noxious fumes, odors, dust and chemicals," and (6)

"dangerous moving machinery and unprotected heights." *Id.* The ALJ then found

that Drayton could perform his "past relevant work as a Deliverer, Outside." *Id.* at

30. Accordingly, the ALJ concluded that Drayton was not disabled.

In finding a light work RFC, the ALJ concluded that Drayton's "medically

determinable impairments during the period at issue might have caused the alleged

symptoms" but that his "statements concerning the intensity, persistence and

limiting effects of these symptoms were not entirely consistent with the medical

evidence and other evidence in the record[.]" *Id.* at 29. The ALJ emphasized that

Drayton's "[o]verall musculoskeletal examinations demonstrated normal ranges of

motion," that he testified "to conservative treatment" and taking "only over-the-counter pain medication," and that his function report "described essentially normal daily activities," like "prepar[ing] light meals, grocery shop[ping], do[ing] laundry, clean[ing], help[ing] care for his daughter's cat, and us[ing] public transportation." *Id.*; *see* 20 C.F.R. § 404.1529(c)(3) (allowing ALJ to consider claimant's daily activities, medication, and treatment, among other factors, in evaluating symptoms to determine disability).

Plaintiff argues that the ALJ failed to "'sufficiently articulate how he arrived at the limitations he identified.'" Pl.'s Mem. at 7 (quoting *Daniel W. v. Comm'r of Soc. Sec.,* No. 20-CV-1786, 2023 WL 3220502, at *2 (W.D.N.Y. May 3, 2023)). This requirement to "tether the limitation to competent evidence and provide a sufficient explanation" does not limit the ALJ "to adopting only those limitations explicitly identified in the record" or prohibit the ALJ from "making reasonable inferences from" available evidence. *Daniel W.*, 2023 WL 3220502 at *2–3; *see Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 440 (S.D.N.Y. 2010) (remanding where ALJ failed to "adequately explain the reasoning underlying an RFC determination and the basis on which it rests"). But the "ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions" must still "afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis

5

would be unnecessary or superfluous." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam). Such standards prohibit the ALJ from "arbitrarily crafting functional limitations . . . translating raw medical data into functional terms . . . or unreasonably drawing highly specific inferences from the nonspecific evidence." *Daniel W.*, 2023 WL 3220502 at *3 (collecting cases).

The Court agrees that the ALJ did not sufficiently tether his RFC findings to proper bases. The ALJ simply "failed to assess [Drayton's] capacity to perform relevant functions" by not explaining why certain evidence warranted particular limitations. *Cichocki*, 729 F.3d at 177. For example, the ALJ discussed Drayton's history of alcohol abuse but did not explain why or how it precluded his exposure to dangerous moving machinery and unprotected heights. Tr. at 27–29. The Commissioner's explanation that this limitation is meant to protect Drayton if he is inebriated or experiencing withdrawal at work is "post hoc" and not discussed by the ALJ. *Glessing v. Comm'r of Soc. Sec. Admin.*, 725 F. App'x 48, 50–51 (2d Cir. 2018) (summary order) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). The same goes for the limitation on bending and climbing stairs/ladders: the Commissioner post hoc cites to portions of the function report where Drayton described his issues with bending, Def's Mem. at 13–14, which the ALJ did not cite or mention in his decision. The flexibility afforded to an ALJ to not have to cite every piece of evidence considered in finding RFC limitations does not

6

absolve the ALJ of having to identify and contextualize the rationale for his

finding. *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Without that, the

Court cannot "glean the rationale of the ALJ's decision." *Id*.

There is also another issue with the ALJ's decision. Some RFC findings,

although arguably tethered, rest on either improper or unevaluable bases. Mainly,

the ALJ mischaracterized the evidence by impermissibly "'cherry-pick[ing]' the

positive aspects of" Drayton's treatment notes, testimony, and function reports that

supported the RFC findings while ignoring the negative. *Rucker v. Kijakazi*, 48

F.4th 86, 94 (2d Cir. 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir.

2019)). In doing so, the ALJ failed to "acknowledge relevant evidence or to explain

its implicit rejection." *Correale-Englehart*, 687 F. Supp. at 422.

Regarding the treatment notes which documented a normal range

musculoskeletal range of motion, the ALJ did not acknowledge that those notes

also mentioned that Drayton had "arthralgias" and "back pain." *See, e.g.*, Tr. at

568, 875, 1098. The ALJ also overlooked that Drayton's testimony and function

reports stated that those activities the ALJ relied on to justify the RFC also

"aggravated [Drayton's] conditions." *Daniel W.*, 2023 WL 3220502 at *3. Drayton

repeated numerous times that he could not painlessly stand or walk longer than 15-

to-20 minutes without triggering his asthma and needing a break. *See, e.g.*, Tr. at

44–46, 232, 234, 247. He also noted that the rain exacerbated his difficulties

walking. *Id.* at 251. And sitting for longer than about an hour also pained Drayton,

who required breaks from sedentary activities like watching TV or reading. Tr. at

230–31, 256. Yet the ALJ found that Drayton could "sit, stand, and walk up to six

hours each in an eight-hour workday, with regularly scheduled breaks," Tr. at 27,

and could work "as a Deliverer, Outside," where it rains and breakrooms are

scarce, *id.* at 30. There is "no evidence in the record to the effect that" Drayton

could sit, stand, and walk up to six hours each, "rather than some other duration or

frequency." *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary

order) (remanding where no evidence demonstrated claimant could "perform

sedimentary work if he could take a six-minute break every hour" and claimant

"testified that he would need a 15-20 minute break").

 That same issue permeates the other daily activities the ALJ looked to in

deciding Drayton's RFC. The ALJ found that Drayton could occasionally climb

stairs, but his function reports detailed that doing so caused him to hyperventilate.

Tr. at 233, 256. And while the reports did state that Drayton did laundry and

prepared light meals, they also said he needed assistance with these tasks if he had

to bend or kneel. *See* Tr. at 227–29, 231, 235, 241. Nowhere in his decision did the

ALJ acknowledge Drayton's issues with bending or kneeling. *Genier v. Astrue*, 606

F.3d 46, 50 (2d Cir. 2010) (per curiam) (remanding where ALJ credited claimant's

testimony that he engaged in daily activities without crediting qualification that

such activities required outside assistance); *Mariani v. Colvin*, 567 F. App'x 8, 11 n.2 (2d Cir. 2014) (summary order) (same).

The ALJ impermissibly "failed to resolve these inconsistencies" in making his RFC findings. *See Cichocki*, 729 F.3d at 177–78 (quoting *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001)); *Genier*, 606 F.3d at 50 (remanding where ALJ "based [RFC] on misreading of the evidence" by deeming claimant's testimony inconsistent with other evidence). Doing so caused the ALJ to draw "highly specific inferences from nonspecific evidence" to "arbitrarily craft functional limitations." *Daniel W.*, 2023 WL 3220502 at \*3 (collecting cases).

Plaintiff lastly argues that the ALJ improperly deemed the record sufficient to render a determination because the Commissioner's own medical consultants, initially and on reconsideration, found the record insufficient "to create an accurate [RFC]." Tr. at 67; *see also* Tr. at 74. The Court agrees and is not convinced by the Commissioner's explanation that the ALJ based his decision on evidence "added to the record after the medical consultants conducted their review." Def.'s Mem. at 15. Contrary to the Commissioner's speculation, the ALJ deemed evidence submitted after October 26, 2020—months before the consultant's reconsideration finding— "of limited probative value[.]" Tr. at 29.

The ALJ's rationale that the consultants did not consider "all of the evidence available at the hearing level" is also unavailing. Tr. at 30. If the reconsideration

consultant did not consider the full record, then the ALJ had to order another consultant to make findings once all the evidence became available. *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999). And, to the extent the reconsideration consultant did consider all the available evidence, it is unclear how the ALJ could believe he had enough evidence to render a decision when the medical consultant did not. The ALJ cannot shirk his "affirmative obligation to develop the administrative record," *Genier*, 606 F.3d at 50, by ostensibly "substitut[ing] his own judgment for competent medical opinion," *see Rosa*, 168 F.3d at 79.

"Even if the Court were able to arrange the above evidence in a way that yielded the ALJ's finding, it is not the Court's responsibility to articulate the ALJ's logic." *Julie Y. v. Comm'r of Soc. Sec.*, No. 19-CV-1362, 2021 WL 431666, at *5 (W.D.N.Y. Feb. 8, 2021). Because the Court cannot "fathom the ALJ's rationale in relation to evidence in the record," it must "remand for further findings or a clearer explanation for the decision." *Cichocki*, 729 F.3d at 177.

### III.    Conclusion

The Court therefore remands the Commissioner's decision. Accordingly,

Plaintiff's motion is GRANTED, and Defendant's motion is DENIED. Consistent

with this M&O, the Commissioner is directed on remand to order a retrospective

RFC assessment.

**SO ORDERED.**

 _/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
April 17, 2025